558 S.E.2d 763 (2002)
253 Ga. App. 174
In the Interest of J.S.J., a child.
No. A01A1998.
Court of Appeals of Georgia.
January 9, 2002.
Parks, Chesin, Walbert & Miller, David F. Walbert, Atlanta, William J. Atkins, Douglasville, for appellant.
*764 Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Robert G. Nardone, for appellees.
BLACKBURN, Chief Judge.
Following a finding by the Juvenile Court of DeKalb County ("Juvenile Court") that his daughter, J.S.J., was deprived, appellant appeals, contending that: (1) Mississippi, not Georgia, retained jurisdiction over the matter pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA")[1] and the Parental Kidnapping Prevention Act ("PKPA");[2] (2) the Juvenile Court erred by failing to transcribe its questioning of J.S.J. in chambers; and (3) the evidence was insufficient to support the finding of deprivation. Because Mississippi, not Georgia, should have retained jurisdiction over this matter pursuant to the UCCJA, we vacate.
The record shows that appellant and J.S.J.'s mother were divorced in Mississippi, where appellant still resides. Pursuant to the Mississippi divorce decree, the mother received primary custody of J.S.J., and appellant was given visitation rights. Subsequently, on April 17, 1999, the Chancery Court of Forrest County, Mississippi ("Chancery Court"), granted appellant temporary custody of J.S.J., and, on May 25, 2000, the Chancery Court modified its prior custody decree, granting primary custody to appellant. Although the reasons behind this custody modification are not dispositive here, it is significant to note that, in its modification order, the Chancery Court found that "the parties have continued to use the child as a pawn in their ongoing dispute between each other and ... both parties have acted in a manner that is detrimental to the child and not in the best interest of the child."
On December 1, 2000, J.S.J. flew to Atlanta to visit her mother for a weekend. J.S.J.'s mother, however, did not return the child as she was supposed to do, and, on December 15, 2000, the Chancery Court explicitly found that it had jurisdiction over the matter pursuant to the UCCJA. Exercising this jurisdiction, the Chancery Court ordered that the mother, who remained in Georgia, be incarcerated for contempt of its prior custody order by absconding with J.S.J. Meanwhile, back in Atlanta, the mother, after having J.S.J. examined by a psychologist and a nurse, filed complaints against appellant with the Georgia Department of Family & Children Services ("DFACS"), alleging child abuse and molestation. On January 1, 2001, DFACS filed a deprivation petition in the Juvenile Court, which it amended on January 10, 2001. DFACS furthered the mother's allegations of abuse in this petition.
Appellant challenged DFACS' petition, arguing, among other things, that Georgia lacked jurisdiction over the matter pursuant to the UCCJA and the PKPA. The Juvenile Court rejected appellant's arguments, and it purported to exercise emergency jurisdiction over the matter pursuant to OCGA § 19-9-43(a)(3)(B). Thereafter, the Juvenile Court found J.S.J. to be a deprived child and placed her in the temporary custody of DFACS. Appellant takes issue with the Juvenile Court's findings.
1. Appellant contends that the Juvenile Court lacked jurisdiction over this matter pursuant to the UCCJA. We agree.
Ordinarily, jurisdiction over child custody cases is in the county of residence of the legal custodian, and one of the purposes of the UCCJA is to assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning [her] care, protection, training, and personal relationships is most readily available and also to assure that the courts of this state decline the exercise of jurisdiction when the child and [her] family have a closer connection with another state; and the UCCJA shall be construed *765 to promote its general purposes. Lightfoot v. Lightfoot.[3] In other words, the UCCJA favors the hearing of custody matters in a child's home state, the state in which the child, immediately preceding the time involved, lived with [her] parents, a parent, or a person acting as a parent for at least six consecutive months. OCGA § 19-9-42(5).
(Citations and punctuation omitted.) Rozier v. Berto.[4] Based on these standards, the home state in this case is clearly Mississippi.
In addition, OCGA § 19-9-48(b) provides:
Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
There are, however, some exceptions to these rules relating to a child's home state and custody violations. OCGA § 19-9-43(a)(3) allows a Georgia court to exercise jurisdiction over a child custody matter if the child is physically present in Georgia, and if either the child has been abandoned or it is a necessity to protect the child from mistreatment, abuse, or neglect. This exercise of jurisdiction, however, should not be employed without grave need.
Before invoking jurisdiction under this exception, a Georgia trial court should remember the purpose of the statute and determine that an emergency exists which demands the exercise of jurisdiction by such Georgia court rather than by the courts of the child's home state. As a general matter, if the emergency pled before the court developed in the home state prior to the time the child was brought into Georgia, Georgia courts should decline jurisdiction in favor of the home state, absent compelling reasons for the Georgia court to do otherwise.
Rozier, supra at 429, 496 S.E.2d 544.
Contrary to the finding of the Juvenile Court, there was no true emergency which required that it exercise its jurisdiction for the protection of J.S.J. The abuse of which J.S.J.'s mother complains arose in Mississippi, not Georgia, and, other than some inconvenience for J.S.J.'s mother, these claims should have been adjudicated in the home state, where the courts were already familiar with J.S.J.'s situation and well aware of the way in which her parents were using her to strike out at each other. "There is nothing here which would have justified litigating the matter in Georgia, rather than [Mississippi], except the convenience of the [mother]." Rozier, supra.
In addition, the evidence of neglect and abuse produced by J.S.J.'s mother is not so egregious that Georgia's emergency jurisdiction should have been triggered. For example, the mother's most compelling piece of evidence was a letter prepared by a nurse who examined J.S.J. In this letter, the nurse reported a small two-millimeter lesion of J.S.J.'s hymen and a general unwillingness by J.S.J. to cooperate. Based on these observations, the nurse opined that J.S.J. had likely been sexually "exposed and maltreated," despite the fact that J.S.J. cried out during the exam that "[m]y daddy didn't do anything." During the deprivation hearing, however, the nurse admitted that she did not know the cause of J.S.J.'s lesion and stated that it could have been caused by either a healing infection or a straddle injury. Thus, the nurse's testimony proved equivocal at best.
In its May 25, 2000 order granting custody of J.S.J. to appellant, the Chancery Court found that J.S.J.'s mother had made unfounded allegations of sexual abuse in at least three jurisdictions. In fact, the Chancery Court found the mother's allegations of abuse so disingenuous that it mandated that she receive "counseling to deal with her unsubstantiated *766 belief that [appellant] has abused [J.S.J.]" prior to receiving custody of her daughter during summer months. By exercising jurisdiction in this case, the Juvenile Court inappropriately allowed the mother to circumvent these critical judgments of her credibility made by J.S.J.'s home state. The UCCJA was designed to prevent exactly such a usurpation of the home state's power.
Moreover, the briefs provided to this Court by both the mother and DFACS make it clear that these parties were attempting to relitigate matters under consideration in Mississippi. Indeed, much of these parties' briefs is devoted to criticisms of procedures employed by both the Chancery Court and the Mississippi guardian ad litem. In fact, both DFACS and J.S.J.'s mother go so far as to accuse the Mississippi court and guardian of malfeasance, alleging that they purposely ignored evidence that J.S.J. had been mistreated by her father. Allowance of such inappropriate interstate bickering would be tantamount to endorsing the forum shopping the UCCJA decries.
Furthermore, DFACS' argument that the deprivation proceeding was not technically a custody matter, and therefore not subject to the provisions of the UCCJA, is erroneous and does not alter the result here. OCGA § 19-9-42(3) defines a "custody proceeding" as including "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation and includes child neglect and dependency proceedings and adoption proceedings." Based on the plain language of the statute, a deprivation proceeding would be encompassed in this definition, as it is a proceeding regarding child neglect and dependency in which child custody is one of many issues. Therefore, contrary to DFACS' argument, jurisdiction over deprivation proceedings involving a child with a foreign home state is governed by the UCCJA. To hold otherwise would allow noncustodial parents to circumvent the UCCJA by merely changing the label of their petition from "change in custody" to "deprivation." We cannot allow the important purposes of the UCCJA to be so easily nullified.
Lewis v. Winzenreid[5] supports this determination. In Lewis, our Supreme Court held:
The juvenile courts of this state should not entertain deprivation proceedings brought by a non-custodial parent to obtain custody from a non-resident custodial parent, for there is a great likelihood in such a situation that the allegations of deprivation will be motivated less by concern for the child than by a desire to avoid the more stringent standard of proof applicable in a modification action in the superior court, wherein a non-custodial parent is required to establish a material change of circumstances substantially affecting the interest and welfare of the child arising since the original decree.
(Punctuation omitted.) Id. at 462-463, 435 S.E.2d 602.
The conclusion reached in Lewis [can be] summarized ... as follows: [The P]arental fight over custody of [a] child that was brought as [a] deprivation proceeding but did not make any valid allegations of deprivation as defined by OCGA § 15-11-2(8) was not a valid deprivation proceeding within the jurisdiction of the juvenile court, but was a custody dispute that fell within the jurisdiction of the superior court.
(Punctuation omitted.) In re M.C.J.[6]
Finally, appellees argue that Georgia could not have transferred this deprivation case back to the Chancery Court because that court lacked jurisdiction over deprivation matters. This overly technical attempt to circumvent the goals of the UCCJA lacks merit. As in Georgia, where the superior court may transfer a deprivation case to the juvenile court when necessary, the Mississippi chancery court may likewise transfer appropriate cases to the youth court of that state. As such, contrary to appellees' contentions, this case could have properly been transferred to Mississippi, where the Chancery Court could ultimately determine what court in that state should handle the allegations *767 of deprivation. Again, the UCCJA was designed to prevent forum shopping in matters concerning the welfare of children, and its major means of achieving this goal is to localize legal proceedings to the home state of the child.
Thus, for all of the foregoing reasons, the Juvenile Court erred by assuming jurisdiction over the case at hand, and we therefore vacate the Juvenile Court's deprivation order.
2. As we have found that the Juvenile Court inappropriately assumed jurisdiction of this matter, appellant's remaining enumerations are rendered moot.
Judgment vacated.
POPE, P.J., and MIKELL, J., concur.
NOTES
[1] OCGA § 19-9-40 et seq. We note that, subsequent to this decision, Georgia modified its version of the UCCJA. Citations in this opinion refer to the UCCJA as it existed when this case was originally decided, as the new version of the statute does not indicate that it was intended to have retroactive effect.
[2] 28 USCA § 1738A.
[3] Lightfoot v. Lightfoot, 210 Ga.App. 400, 402(2), 436 S.E.2d 700 (1993).
[4] Rozier v. Berto, 230 Ga.App. 427, 428-429, 496 S.E.2d 544 (1998).
[5] Lewis v. Winzenreid, 263 Ga. 459, 435 S.E.2d 602 (1993).
[6] In re M.C.J., 271 Ga. 546, 547, 523 S.E.2d 6 (1999).